UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

ESTHER HUSSEY,

    Plaintiff,

  v.                                                Case No. 12-C-73

MILWAUKEE COUNTY,

    Defendant.

**DECISION AND ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT**

In 1966, the late then-Justice Myron L. Gordon wrote, "There is a caustic saying which perhaps is befitting the result of this case: 'In a thousand pounds of law I find not a single ounce of love.'" *Marion v. Orson's Camera Ctrs., Inc.*, 138 N.W.2d 733, 737 (Wis. 1966). Thirty years later, then-Judge Gordon repeated this quote in *Pabst Brewing Co. v. Corrao*, 940 F. Supp. 217, 218 (E.D. Wis. 1996). In *Pabst Brewing*, union retirees moved for injunctive relief to halt their former employer's elimination of health-care benefits.[1] *Id.* at 219. Judge Gordon denied the retirees' motion, albeit with a heavy heart, based on the language of the collective-bargaining agreement and other documents. *Id.* at 223.

Although neither party argues that *Pabst* has direct bearing on this case, there are several notable similarities. Here, Esther Hussey ("Hussey"), a soon-to-be 86-year-old woman, seeks injunctive relief against her former employer, Milwaukee County (the "County"), to stop the County from requiring retirees to pay health-care costs. Hussey began her employment with the County in 1961 and retired in

---

[1] Pabst actually initiated the litigation by filing a complaint seeking a declaration that its termination of benefits did not violate ERISA or other laws. *Id.* at 219. A sub-class of retirees represented by Mr. Corrao thereafter filed a counterclaim and the aforementioned motion for injunctive relief. *Id.*

1991. According to Hussey, not until 2001 did the County deviate from its long-time practice of providing cost-free health insurance to retirees, and the changes did not impact Hussey personally until 2006. In 2011, Hussey learned that the County had proposed a budget that would require even more cost sharing by retirees. As a single, older woman with several significant health problems, the budget implementation would affect Hussey greatly.

So Hussey, a proud south-side resident of Milwaukee, filed a state-court complaint against the County, alleging an unlawful taking under state and federal law.[2] The County removed the case to federal court, where the parties consented to United States magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c) and General L. R. 73 (E.D. Wis.). Both parties filed motions for summary judgment on liability. The motions have been fully briefed and are now ready for resolution. For the reasons that follow, albeit with a great deal of sympathy for the plaintiff, the court will deny Hussey's request for relief and will grant the County's motion for summary judgment.

## I. PROCEDURAL AND FACTUAL BACKGROUND[3]

In 1961, Hussey was hired by the County; she worked primarily in the Register of Deeds Office. (Defendant's Responses to Plaintiff's Proposed Findings of Fact ("Def. Resp. FOF") ¶ 2.) At that time, Hussey was only required to make a small monthly contribution toward the cost of her health insurance. (Def. Resp. FOF ¶ 8.)

In 1971, Milwaukee County General Ordinance ("MCGO") Section 17.14 read, in pertinent part:

---

[2] Hussey also purported to file suit on behalf of a class of similarly situated individuals. The court has stayed briefing on this issue pending resolution of the motions for summary judgment.

[3] The court takes these facts primarily from the parties' statements pursuant to Civil L. R. 56 (E.D. Wis.). *See generally Koszola v. Bd. of Educ.*, 385 F.3d 1104, 1109 (7th Cir. 2004) (reaffirming the court's broad discretion to require strict compliance with local rules).

> (7) **Blue Cross Hospital and Blue Shield Surgical-Medical Care and Medicare**. Hospital and surgical insurance shall be provided for county employes upon application of each employe. The county shall participate in the payment of monthly premiums for such insurance as follows:
>
> (a) The monthly premiums for a single or a family contract (and for a major medical contract effective January 4, 1970 . . . ) shall be paid for eligible employes in the classified service, except employes 65 years of age or over.
>
> (b) The monthly premiums for a single supplemental contract and for medicare, Plan B, (and for major medical effective January 4, 1970 . . .) shall be paid for all eligible employes in the classified service 65 years of age or over.
>
> (c) The monthly premiums as listed in (b), shall be paid for spouses of eligible employes when the spouse is 65 years of age or over and the employe has been enrolled in the family contract.
>
> (d) The monthly premium as listed in (a), shall be paid for spouses of eligible employes when the spouse is under 65 years of age and the employe is 65 years of age or over and has been enrolled in the family contract.

MCGO Sec. 17.14 (1969).[4]

That year, the County expanded health-insurance coverage to retirees by amending MCGO Section 17.14(7).[5] (Def. Resp. FOF ¶ 10; Plaintiff's Response to Defendant's Proposed Statement of Undisputed Facts ("Pltf. Resp. SOF") ¶¶ 1, 13.) Specifically, in June 1971, the County ordained:

> SECTION 1. Section 17.14(7)(i) of the General Ordinances of Milwaukee County is repealed and recreated to read as follows:
>
> > Provisions of (a), (b), (c) and (d) shall apply to retired members of the County Retirement System with 15 or more years of creditable pension service as a County employe or beneficiaries of such members.
>
> SECTION 2. The payment of Blue Cross-Blue Shield and major medical insurance premiums as above provided shall be made for coverage commencing July 1, 1971 for

---

[4] Neither party cited (or provided) the full text of this ordinance, which the court's librarian was only able to obtain from the Wisconsin Historical Society.

[5] County ordinances control dispensation and modification of retirement benefits. (Def. Resp. FOF ¶ 20.)

employes presently enrolled and payment of premiums for those retired employes not
presently enrolled shall be made for coverage commencing September 1, 1971.

(Pltf. Resp. SOF ¶ 2.) Pursuant to this ordinance, the County admits that it is required to pay the full cost of health-insurance premiums for eligible retirees. (Def. Resp. FOF ¶ 26.)

In 1991, Hussey retired. (Def. Resp. FOF ¶ 2.) That same year, she received a County benefit-plan booklet that explained:

> If an active employee retires with fifteen years or more of County service, the retiree may participate in the health plan in which he/she is currently enrolled on the same basis as coverage provided to the active employee group. The County will make the full premium contribution on behalf of the retiree.

(Def. Resp. FOF ¶ 13.) At the time of her retirement, Hussey paid no co-pays or co-insurance, nor did she have any deductibles. (Def. Resp. FOF ¶ 14.)

In 1996, MCGO Section 17.14(7)(h) was amended to read, in pertinent part:

> The County shall pay the full monthly cost of providing such coverage to retired members of the County Retirement System with 15 or more year of creditable pension service . . . . The provisions of this subsection are considered a part of an employee's vested benefit contract . . . .

(Pltf. Resp. SOF ¶ 4; Def. Resp. FOF ¶ 15.) The "vested benefit" language appears in every subsequent relevant edition of the ordinances. (Def. Resp. FOF ¶ 16.)

In 2011, the County adopted a budget that implemented increases in co-pays, co-insurance, and deductibles applicable to all active and retired employees. (Def. Resp. FOF ¶¶ 22, 27; Pltf. Resp. SOF ¶¶ 5, 9.) The County also changed the coordination-of-benefits method for retirees (like Hussey) who were subject to Medicare from the "come-out-whole" method to the "non-duplication" method. (Def. Resp. FOF ¶¶ 23-24; Pltf. Resp. SOF ¶¶ 6, 10.) Under the latter method, "when Medicare is the primary health coverage, the benefit paid by Milwaukee County's plan will be the difference between the benefit

4

provided in section 17.14(7) and the amount paid by Medicare." MCGO Sec. 17.14(7)(dd). The County allegedly implemented this change because, under the "come-out-whole" method, the County was paying the difference between the County's benefit plan amount and the Medicare cost, regardless of whether that payment caused a retiree to pay less than an active employee for the same treatment. (Def. Resp. FOF ¶ 24.)

The County has modified its employee health-insurance plan numerous times since 1971, including making changes to deductibles, co-pays, and co-insurance, as well as coordination of benefits with Medicare. (Pltf. Resp. SOF ¶ 13.) There has been no record of any legal challenge to any of these changes (other than one unrelated labor arbitration) until this suit. (Pltf. Resp. SOF ¶ 14.) Hussey recalled that the County has required some retiree cost sharing since 2001, and that these changes have impacted her personally since 2006. (Hussey Aff. ¶¶ 9, 14.)

On December 27, 2011, Hussey filed a civil-rights complaint in state court, alleging that the County committed an unlawful taking under state and federal law when it "refused to pay and protect [her] earned property rights to fully paid health care benefits." (Compl. ¶ 22.) She requested a temporary restraining order and other injunctive relief, compensatory and punitive damages, and attorney's fees. The County removed the case to federal court on the basis of federal-question jurisdiction. Hussey filed a motion for preliminary injunction, which was denied without prejudice on March 8, 2012. Thereafter, the parties filed cross motions for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

A district court shall grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome

5

of the suit." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A party asserting that a fact is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). However, a mere "scintilla of evidence" in support of the nonmovant's position is insufficient. *See Delta Consulting Grp. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1137 (7th Cir. 2009).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003) (citing *Anderson*, 477 U.S. at 255). "'[I]n the light most favorable' . . . 'simply means that summary judgment is not appropriate if the court must make a choice of inferences.'" *Harley-Davidson Motor Co. v. PowerSports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) (quoting *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir. 1997)).

## III. DISCUSSION

Here, the material facts are undisputed. All that remains is a legal question: What health-care benefits did the County promise Hussey? Hussey contends that the County promised her "cost-free" health insurance, meaning no co-pays, co-insurance, or deductibles. The County, on the other hand, maintains that it only promised Hussey "premium-free" health insurance, meaning no monthly cost but with the possibility of co-pays, co-insurance, and deductibles. If the County is correct, then Hussey's taking claim must fail.

Both parties rely primarily on the 1971 ordinances that first expanded health-insurance coverage to retirees. At that time, MCGO Section 17.14(7) stated that health insurance would be provided to County employees, and subsections (a)-(d) further stated that the County would pay the "monthly premiums" for certain employees and their spouses. Section 1 of the June 1971 ordinance modified MCGO Section 17.14(7)(i) to read that provisions of subsections (a)-(d) "shall apply to retired members of the County Retirement System with 15 or more years of creditable pension service as a County employee or beneficiaries of such members." Section 2 of the June 1971 ordinance stated that "[t]he payment of . . . insurance premiums as above provided [in Section 1] shall be made" by the County.

In sum, the June 1971 ordinance incorporated by reference the active employees' health-insurance program and required the County to pay "insurance premiums" for eligible retirees. The incorporated provisions stated that the County's obligation was to pay the "monthly premiums." (Suffice it to say that co-pays, co-insurance, and deductibles are not incurred on a month-to-month basis.) Furthermore, there was no mention of a specific benefit schedule or a definition of the benefit in terms that connote "cost-free" health insurance. Thus, the language creating the benefit at issue lends little support to Hussey's position.

7

Along the same lines, when Hussey retired in 1991, she received a County benefit-plan booklet that explained that an eligible retiree "may participate in the health plan in which he/she is currently enrolled on the same basis as coverage provided to the active employee group" and that "[t]he County will make the full premium contribution on behalf of the retiree." In 1996, MCGO Section 17.14(7)(h) was amended to provide that "[t]he provisions of this subsection are considered a part of an employee's vested benefit contract." But the ordinance also reaffirmed that the County's obligation regarding eligible retirees was to "pay the full *monthly* cost of providing such coverage." (Emphasis added.)

The problem is that, as previously explained, for many years, Hussey was not subject to co-pays, co-insurance, or deductibles. So, quite understandably, she expected that things would continue that way. But in 2011, the County adopted a budget that, among other things: (1) implemented increases in co-pays, co-insurance, and deductibles applicable to all employees; and (2) changed the coordination-of-benefits method for retirees subject to Medicare. To be sure, these measures represented a significant change for Hussey. Taking a step back, however, there is no evidence that the budget failed to align retirees' health-care benefits with those of active employees while still covering retirees' monthly premiums. As previously discussed, the relevant ordinances required nothing more. And Hussey has not explained why the court may look past the plain language of the ordinances.

Nevertheless, Hussey forcefully argues that, "[w]ith the 2012 Budget, Milwaukee County, while proclaiming it is being loyal to its obligation to pay retiree premiums, has really shifted premium costs to the back end, by exacting from retirees payment for deductibles, co-pays, and co-insurance." (Pltf. Opening Br. at 4.) This may be more true than false. And it may seem unfair (or at least particularly painful for retirees). But Hussey "seeks the protection offered by this [c]ourt for enforcement of the *promises* made to her by her former employer." (Pltf. Opening Br. at 28 (emphasis added).) The fact

8

that, in the past, Hussey was not asked to cost share, unfortunately for her, does not necessarily mean that the County *promised* her those benefits.

Nor does the Wisconsin Supreme Court precedent cited by Hussey foreclose the County's actions.[6] For example, Hussey relies heavily on *Schlosser v. Allis-Chalmers Corp.*, 271 N.W.2d 879 (Wis. 1978). There, the question was "whether [the employer] may invoke its reserved right to amend the terms of its group life insurance program to require the plaintiffs to contribute to the cost of the policy." *Id.* at 888. The Wisconsin Supreme Court held that the employer could not change the benefit "because the employee's rights under the plan became vested upon the employee's retirement after fulfilling the conditions precedent to participation in the plan." *Id.* at 889; *see also Roth v. City of Glendale*, 614 N.W.2d 467, 474 (Wis. 2000) (holding that "a vesting presumption applies [to retirees] under the collective bargaining agreements in the absence of contract language or extrinsic evidence indicating an intent against the vesting of retiree health benefits"). Here, the parties agree that Hussey's rights are vested; the issue only concerns the *content* of those rights, as expressly dictated by the ordinances.[7]

Hussey also relies on a Wisconsin Court of Appeals case, *Rehrauer v. City of Milwaukee*, 631 N.W.2d 644 (Wis. 2001), for the proposition that certain benefits vest as of the date of hire and cannot be reduced from their highest level. (Pltf. Opening Br. at 18.) Applying such a holding here, however, would be inconsistent with a more recent Wisconsin Supreme Court case, *Loth v. City of Milwaukee*, 758

---

[6] The County agrees, however, that even Hussey's constitutional claim depends on her entitlement to the property at issue under state law. (Def. Opening Br. at 8.)

[7] *Wisconsin Retired Teachers Association, Inc. v. Employe Trust Funds Board*, 558 N.W.2d 83 (Wis. 1997), is also inapposite. There, the Wisconsin Supreme Court held that the challenged legislation "took" the plaintiffs' property interest in having distributions of annuity reserve surpluses made, as *specifically* set forth in Wis. Stat. § 40.27(2). *Id.* at 93. Here, by contrast, the ordinances did not state the benefit in similar detail so as to prohibit the County's cost-sharing measures.

9

N.W.2d 766 (Wis. 2008).[8] In *Loth*, the plaintiff had 15 years of service with the City in 1999, reached the age of 60 in 2005, and retired in 2005. *Id.* at 766. The pre-2004 City health-insurance plan provided premium-free insurance for retired employees between ages 60 and 65 with 15 years of service; the post-2004 plan provided shared-premium-cost insurance for similar employees who retired after January 1, 2004. *Id.* at 767. The court held that the plaintiff was not entitled to premium-free insurance because he had not met all three requirements of the pre-2004 plan before it was amended. *Id.* at 775. Thus, Wisconsin Supreme Court precedent: (1) rejects that a retiree health benefit is fixed at hiring or at its most generous level; and (2) supports that a benefit should not be expanded beyond the language creating it.[9]

## IV. CONCLUSION

In affirming Judge Gordon's decision in *Pabst Brewing*, the Seventh Circuit noted that "it can be a terrible hardship for an elderly person who has been receiving benefits from a former employer suddenly to find the rug pulled out from under her. There is an element of betrayal as well, if the retiree/former employee understood that the 'lifetime' health benefits were a form of deferred compensation for her work." *Pabst Brewing Co. v. Corrao*, 161 F.3d 434, 442 (7th Cir. 1998). I echo these sentiments. But because there is insufficient evidence that the County was *legally* obligated to

---

[8] Despite being decided earlier, *Rehrauer* was not cited in *Loth*.

[9] The County also supports its position with Hussey's admission that the County has modified its employee health-insurance plan numerous times since 1971—including making changes to deductibles, co-pays, and co-insurance, as well as coordination of benefits with Medicare—without legal opposition. (Def. Opening Br. at 11-12.) The court finds this evidence less than compelling, considering that Hussey also stated that any such changes did not impact her personally until 2006. In any event, as previously discussed, the court need not look past the clear language of the ordinances to decide the ultimate issue in this case.

10

provide cost-free, as opposed to premium-free, health insurance to Ms. Hussey, the court is unable to grant her relief. Rather, for the reasons set forth above, the County is entitled to summary judgment.

**NOW THEREFORE IT IS ORDERED** that the plaintiff's motion for partial summary judgment be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the defendant's motion for summary judgment be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's complaint be and hereby is **DISMISSED WITH PREJUDICE**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this 29th day of October 2012, at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge